## A09A0202. METTS v. THE STATE.
(677 SE2d 377)

BERNES, Judge.

This case arises out of allegations that Tyson Carmin Metts forced his girlfriend's minor daughter to orally sodomize him several times over a three-year period. The jury found Metts guilty of aggravated child molestation, child molestation, and false imprisonment. The trial court denied his amended motion for new trial. On appeal, Metts contends that there was insufficient evidence to convict him; that his due process rights were violated because the state acted with an improper motive in reindicting him; that the false imprisonment count of the indictment lacked the requisite specificity; that his false imprisonment and child molestation convictions should have been merged into his aggravated child molestation conviction; that his conviction and felony sentence for child molestation were improper based on the rule of lenity; that the trial court erred by charging the jury on prior consistent statements; and that the trial court failed to properly recharge on false imprisonment in response to a question from the jury. Additionally, Metts contends that he was denied effective assistance from his trial counsel. Finding no reversible error, we affirm.

1. Following a criminal conviction, a defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. *Neugent v. State*, 294 Ga. App. 284 (1) (668 SE2d 888) (2008). "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt." (Citations and punctuation omitted.) Id. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed that Metts was the boyfriend of the victim's mother. He lived with the mother and her four minor children, including the victim, in an apartment and later in a house located in Fulton County. Metts often was home alone with the children while the mother was away at work.

On at least six separate occasions over a three-year period, Metts forced the victim to perform oral sex on him until he ejaculated in her mouth. While the victim was forced to perform oral sex, Metts sometimes would play pornographic movies on the television. On one occasion, Metts locked the door to the house and would not let the victim leave until she had engaged in oral sex. These acts of sexual abuse occurred when the victim was between the ages of six and nine years old.

During this time period, the victim told her mother several times that Metts was forcing her to perform oral sex on him. Eventually,

after the victim provided an accurate description of Metts's penis, the mother forced Metts out of the home and took the victim to the hospital. The victim subsequently described the sexual abuse that had occurred to a police investigator and a forensic interviewer. As a result, the victim and her siblings were removed from the home, and both the mother and Metts were arrested and indicted for offenses relating to the sexual abuse.[1]

At Metts's trial, the state relied upon the testimony of the victim, her mother, and the police investigator and introduced into evidence a videotape of the victim's forensic interview. Two of the victim's siblings also testified that on one occasion, they had peeked into their mother's bedroom and had seen Metts sitting on the bed with the victim's head going up and down between his legs. In contrast, Metts took the stand and denied that he had ever forced the victim to perform oral sex or watch pornographic movies with him.

After hearing the testimony and viewing the videotaped forensic interview, the jury convicted Metts of aggravated child molestation, child molestation, and false imprisonment. Arguing that "[t]oo many doubts remain about this case," Metts now challenges the sufficiency of the evidence supporting his three convictions. We conclude, however, that any rational trier of fact was entitled to find Metts guilty beyond a reasonable doubt of the offenses as charged. *Jackson*, 443 U. S. 307.[2]

(a) *Aggravated Child Molestation.* "A person commits the offense of child molestation when he or she does an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a). "Child molestation advances to aggravated child molestation with the addition of either physical injury to the child or sodomy. Sodomy, in turn, is defined as any sexual act involving the sex organs of one person and the mouth or anus of another." (Footnotes omitted.) *Wright v. State*, 259 Ga. App. 74, 77 (2) (576 SE2d 64) (2003). See OCGA §§ 16-6-2 (a) (1); 16-6-4 (c). In the present case, the indictment averred that Metts committed aggravated child molestation "by placing [his] male sex organ into and upon the mouth of [the victim], with the intent to

---

[1] Ultimately, the mother entered a plea of guilty to one count of cruelty to children in the third degree pursuant to *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).

[2] To the extent that Metts's sufficiency argument is predicated on alleged discrepancies in the witnesses' testimony, we note that "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Citation and punctuation omitted.) *Bilow v. State*, 279 Ga. App. 509, 511-512 (1) (631 SE2d 743) (2006).

arouse and satisfy [his] sexual desires."

The victim testified at trial that Metts forced her to perform oral sex on him until he ejaculated on at least six separate occasions. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. Furthermore, the videotaped forensic interview and the testimony of the police investigator and the victim's mother concerning what the victim told them were admissible as substantive evidence under the Child Hearsay Statute, OCGA § 24-3-16.[3] See, e.g., *Lamb v. State*, 293 Ga. App. 65, 66 (666 SE2d 462) (2008). Finally, the jury was entitled to consider the eyewitness testimony of two of the victim's siblings to one of the incidents of forced oral sodomy. Accordingly, there was more than sufficient evidence to support Metts's aggravated child molestation conviction. *Jackson*, 443 U. S. 307. See OCGA §§ 16-6-2 (a) (1); 16-6-4 (c); *Mullis v. State*, 292 Ga. App. 218, 218-219 (1) (664 SE2d 271) (2008); *Berman v. State*, 279 Ga. App. 867, 869 (1) (632 SE2d 757) (2006).

(b) *Child Molestation*. The indictment averred that Metts committed child molestation "by causing [the victim] to view video images depicting adults engaged in sexually explicit conduct while in [Metts's] presence, with the intent to arouse and satisfy [Metts's] sexual desires." Metts argues that there was insufficient evidence presented at trial that he "caus[ed]" the victim to view the pornographic video images. His argument is without merit.

The victim testified that she watched a "nasty movie" depicting sexual intercourse between a man and woman on more than one occasion in the company of Metts. In turn, the police investigator who interviewed the victim testified that the victim stated that Metts "had called her in to the bedroom, forced her to put his penis in her mouth, and he also had a pornographic movie on at that time that he was watching while . . . he had her doing this to him." The investigator further testified that the victim told him that Metts "forced her to perform oral sex on him while watching a pornographic movie." Given this testimony, it cannot be said that Metts played a merely passive role in the victim's watching of the pornographic movie. Sufficient evidence was provided by the state to support Metts's conviction for child molestation. *Jackson*, 443 U. S. 307. See OCGA § 16-6-4 (a); *Mullis*, 292 Ga. App. at 218-219 (1); *Berman*, 279 Ga. App. at 869 (1).

---

[3] OCGA § 24-3-16 provides:

A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

(c) *False Imprisonment.* Tracking the language of the criminal statute,[4] the indictment averred that Metts committed false imprisonment in that "[he] did unlawfully detain [the victim], without legal authority and in violation of the personal liberty of said [victim]." The police investigator testified that the victim told him that on one occasion, Metts "had locked the house, would not let her out, called her into the bedroom, and forced her to perform oral sex on him." The victim did not herself testify that Metts ever locked her in the house.

Metts contends that the investigator's testimony was inadmissible hearsay because the victim's statement that she was locked in the house was not a statement "describing any act of sexual contact or physical abuse performed with or on the child," as required by the Child Hearsay Statute, OCGA § 24-3-16. As such, Metts contends that there was no competent evidence establishing the crime of false imprisonment. We are unpersuaded.

It is true that the victim's statement that Metts locked her in the house and would not let her leave does not in itself describe an act of sexual contact or physical abuse if considered in a vacuum. But a child's statement is admissible under the Child Hearsay Statute if it is "an inextricable part of the child's description of the act of sexual abuse at issue." *In the Interest of B. H.*, 295 Ga. App. 297, 303 (6) (a) (671 SE2d 303) (2008). See also *Brewton v. State*, 216 Ga. App. 346, 350 (5) (454 SE2d 558) (1995), rev'd on other grounds, 266 Ga. 160 (465 SE2d 668) (1996) (concluding that "statements as to the circumstances in which appellant chased her son down the hall while carrying a maul constitute[ ] statements regarding 'any act' of physical abuse within the meaning of the [Child Hearsay Statute]"). And when read in context rather than in isolation, the victim's statement clearly was part of the victim's description of an act of sexual abuse, namely, Metts's act of forcing her to perform oral sex on him. Hence, the investigator's testimony concerning the victim's statement was admissible as substantive evidence under the Child Hearsay Statute and was sufficient, standing alone, to support the false imprisonment conviction. See id. See also *Jackson*, 443 U. S. 307; *Turner v. State*, 253 Ga. App. 760, 761 (1) (560 SE2d 539) (2002) ("evidence that [the defendant] confined 12-year-old T. C. by closing the door, turning off the light, standing in front of her as she sat on a table, and pushing her back, rendering her unable to resist" established false imprisonment).

2. Metts next contends that his due process rights were violated

---

[4] OCGA § 16-5-41 (a) provides: "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."

because the state acted with an improper motive in reindicting him. The record reflects that Metts was originally indicted on October 8, 2004, for the three charged offenses. The indictment averred that the false imprisonment and child molestation crimes occurred on August 3, 2004. At the request of the state, the indictment was later placed on the dead docket, and Metts was reindicted on October 12, 2004. The second indictment included the same three counts against Metts but added one count against the mother for cruelty to children. The mother subsequently entered an *Alford* plea on the cruelty to children count. The second indictment also was placed on the dead docket, and Metts was indicted for a third time on October 11, 2005. The third indictment removed the count against the mother and modified the false imprisonment and child molestation counts to allege that the two crimes occurred "between the 1st day of December, 2001 and the 3rd day of August, 2004, the exact dates unknown to the grand jurors."

Metts has failed to prove any due process violation. There is no statute or case law that as a general rule precludes the state from reindicting a defendant on added or modified charges, as long as jeopardy has not yet attached to the first indictment, which undisputably had not occurred here. *Zinnamon v. State*, 261 Ga. App. 170, 173 (2) (a) (582 SE2d 146) (2003). See *Larochelle v. State*, 219 Ga. App. 792, 794 (2) (466 SE2d 672) (1996) ("[T]he existence of a prior indictment generally is not grounds for quashing the second indictment, although the state may be required to elect upon which indictment it will proceed.") (citation and punctuation omitted).[5] As the Supreme Court of the United States has emphasized,

> [a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. . . . [T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

(Footnotes omitted). *United States v. Goodwin*, 457 U. S. 368, 382 (III) (102 SC 2485, 73 LE2d 74) (1982).

An exception to this general rule exists where the subsequent indictment increases the severity of the charges in response to the

---

[5] Compare OCGA § 17-7-53.1 ("If, upon the return of two 'true bills' of indictments or presentments by a grand jury on the same offense, charge, or allegation, the indictments or presentments are *quashed* for the second time, whether by ruling on a motion, demurrer, special plea or exception, or other pleading of the defendant or by the court's own motion, such actions shall be a bar to any future prosecution of such defendant for the offense, charge, or allegation.") (emphasis supplied).

defendant's exercise of certain procedural rights, which raises the appearance of retaliation or prosecutorial vindictiveness. See *Blackledge v. Perry*, 417 U. S. 21, 25-28 (I) (94 SC 2098, 40 LE2d 628) (1974); *Larochelle*, 219 Ga. App. at 794 (2). That, however, is not the case here, since the third indictment did not increase the severity of the charges against Metts. Nor was the third indictment filed in response to Metts's exercise of any of his procedural rights. Rather, the state reindicted Metts a third time in response to the mother's *Alford* plea and in order to clarify the possible time period of the victimization. Metts, therefore, is unable to support his contention that his due process rights were violated when the state exercised its discretion to reindict him. See *Lopez v. State*, 267 Ga. App. 178, 179-180 (1) (598 SE2d 898) (2004); *Zinnamon*, 261 Ga. App. at 173 (2) (a); *Larochelle*, 219 Ga. App. at 794 (2).

3. Metts further argues that the false imprisonment count of the third indictment lacked the requisite level of specificity.

> [A] contention that a count of the indictment lacks sufficient specificity is an attack on the form of the indictment, which must be addressed by filing a special demurrer to the indictment. Such a special demurrer must be filed before pleading not guilty to the indictment; otherwise, the matter is waived. Raising the issue for the first time on appeal as [Metts] has done here is too late.

(Citations and punctuation omitted.) *Smith v. State*, 282 Ga. App. 339, 341-342 (1) (638 SE2d 791) (2006). See *Christian v. State*, 288 Ga. App. 546, 548-549 (2) (654 SE2d 452) (2007).

4. According to Metts, the trial court erred in failing to merge his false imprisonment conviction into his aggravated child molestation conviction. We discern no error.

Under Georgia law, convictions merge and multiple punishment is precluded if "[o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). But "[t]he rule prohibiting more than one conviction if one crime is included in the other does not apply unless 'the same conduct' of the accused establishes the commission of multiple crimes." *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007). See *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). Applying these principles, we conclude that the trial court was not required to merge the false imprisonment and aggravated child molestation convictions.

The indictment averred that Metts committed false imprisonment by unlawfully detaining the victim in violation of her personal liberty and committed aggravated child molestation by forcing the victim to perform oral sex on him. As to false imprisonment, there

was evidence that on one occasion, Metts locked the victim in the home and would not let her leave. As to aggravated child molestation, there was evidence that Metts forced the victim to perform oral sex on him on repeated occasions spanning several years. Since the false imprisonment and aggravated child molestation convictions could be sustained based on different conduct, separate convictions were appropriate. See *Waits*, 282 Ga. at 4 (2). See also *Daniels v. State*, 278 Ga. App. 332, 337 (3) (629 SE2d 36) (2006) (no merger when the victim recounted multiple incidents of the acts alleged in the indictment); *Kirby v. State*, 187 Ga. App. 88, 89 (2) (369 SE2d 274) (1988) (same).

5. Metts contends that the trial court also erred in failing to merge his aggravated child molestation and child molestation convictions because the latter crime was a lesser included offense of the former crime. Again, we discern no error.

While child molestation may be a lesser included offense of aggravated child molestation, where separate and distinct acts of molestation occur at different locations or on different dates, no merger occurs. See *Brewer v. State*, 251 Ga. App. 77, 78-79 (553 SE2d 363) (2001) (child molestation did not merge into aggravated child molestation because offenses were proven by different acts of molestation). Cf. *Miller v. State*, 226 Ga. App. 509, 515 (5) (486 SE2d 911) (1997) (concluding that while child molestation may be a lesser included offense of rape, no merger occurs "where separate and distinct acts of molestation occur which are short of rape or where they occur at different locations or on different dates") (citation and punctuation omitted); *Walker v. State*, 214 Ga. App. 777, 780 (6) (449 SE2d 322) (1994) (reaching same conclusion with respect to child molestation and statutory rape). The indictment alleged, and the evidence showed, that Metts committed child molestation by causing the victim to view pornographic video images with the intent to arouse and satisfy his sexual desires, and committed aggravated child molestation by forcing the victim to perform oral sex on him. The aggravated child molestation and child molestation convictions were established by different acts of molestation; no merger, therefore, occurred. See id.

6. Metts maintains that his conviction and felony sentence for child molestation were improper because his alleged conduct also violated OCGA § 16-12-103 (a) (1), which makes it a misdemeanor of a high and aggravated nature to furnish or disseminate harmful material to a minor.[6] Metts argues that under the rule of lenity, he

---

[6] OCGA § 16-12-103 (a) (1) provides:
It shall be unlawful for any person knowingly to sell or loan for monetary

could be prosecuted only for the misdemeanor offense. We disagree.

The rule of lenity entitles a defendant to receive the lesser of two penalties where the identical conduct would support either a felony or misdemeanor conviction. *Velasquez v. State*, 276 Ga. App. 527, 528-529 (1) (623 SE2d 721) (2005); *Quaweay v. State*, 274 Ga. App. 657, 658 (618 SE2d 707) (2005). See *Dixon v. State*, 278 Ga. 4, 6 (1) (a) (596 SE2d 147) (2004) (applying rule of lenity where "the [s]tate retained the discretion to prosecute the exact same conduct as either misdemeanor statutory rape or felony child molestation"). Here, however, the two offenses at issue require different conduct. The crime of child molestation requires, among other things, proof of the intent to arouse or satisfy the sexual desires of either the child or the perpetrator, see OCGA § 16-6-4 (a), which is not a required element of the crime of furnishing or disseminating harmful material to a minor, see OCGA § 16-12-103 (a) (1), and so the rule of lenity does not apply. See *Walker v. State*, 289 Ga. App. 879, 881-882 (5) (658 SE2d 375) (2008) (rule of lenity inapplicable because first degree forgery required intent to defraud, which was not a required element of the false identification offenses of which the defendant was charged); *Velasquez*, 276 Ga. App. at 528-529 (1) (rule of lenity inapplicable because second degree forgery required intent to defraud, which was not a required element of the separate offense of possession of a false identification document).

7. Metts argues that the trial court erred by charging the jury on prior consistent statements. In his view, the testimony of the police investigator concerning what the victim told him and the videotape of the victim's forensic interview were not admissible as prior consistent statements, rendering a charge on such statements improper. But regardless of whether the investigator's testimony and videotaped interview could be admitted as prior consistent statements, they were admissible under the Child Hearsay Statute, OCGA § 24-3-16, as "statement[s] made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another." See, e.g., *Lamb*, 293 Ga. App. at 66. Resultantly, any error in charging on prior consistent statements was harmless. See *Whitaker v. State*, 293 Ga. App. 427,

---

consideration or otherwise furnish or disseminate to a minor: . . . Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors[.]

A person convicted of this offense is guilty of a misdemeanor of a high and aggravated nature. OCGA § 16-12-105.

429-430 (3) (667 SE2d 202) (2008).[7]

8. Metts further asserts that the trial court failed to properly recharge on false imprisonment in response to a question from the jury. We do not agree.

In its jury charge, the trial court properly instructed the jury on the elements of false imprisonment. During its subsequent deliberations, the jury submitted the following note to the court: "Please define false imprisonment — Can it be emotional or just i.e. locked door?" In response, the trial court recharged the jury on the elements of false imprisonment and then instructed the jury to consider that definition of the offense, in conjunction with the rest of the charges and the evidence as the jury found it to be, to determine whether Metts was guilty of false imprisonment. The trial court did not elaborate further.

"[T]his Court has traditionally deferred to the sound discretion of trial court judges in matters concerning the scope of a requested recharge." (Footnote omitted.) *Duffie v. State*, 273 Ga. 314, 316-317 (3) (540 SE2d 194) (2001). Having reviewed the trial court's initial charge and its recharge to the jury, we are confident that the trial court's recharge did not mislead or confuse the jurors or otherwise curtail the jury's consideration of the evidence. The trial court did not abuse its discretion in its recharge to the jury. See id. at 316 (2); *Madison v. State*, 281 Ga. 640, 643 (3) (641 SE2d 789) (2007).

9. Lastly, Metts contends that he was denied effective assistance from defense counsel in several respects.

> The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation omitted.) *Jones v. State*, 289 Ga. App. 219, 222 (2) (656 SE2d 556) (2008). "We must affirm a trial court's finding that a defendant has not been denied effective assistance of counsel unless it is clearly erroneous." (Citation and punctuation omitted.) *Bogan v. State*, 249 Ga. App. 242, 244 (2) (547 SE2d 326) (2001).

(a) All three counts of the third indictment averred that the

---

[7] We note that "the better practice is for the trial court not to charge at all on prior consistent statements and leave the matter to the arguments of counsel." *Whitaker*, 293 Ga. App. at 430 (3).

crimes occurred between December 1, 2001, and August 3, 2004. Metts argues that his defense counsel was ineffective in failing to file a pretrial demurrer to require the state to identify a more specific date for the charged offenses. We do not agree because

> [Metts] [has] not demonstrate[d] that the length of the period in which the indictment alleged the crimes were committed materially affected his ability to present a defense, which did not rely on an alibi or other time sensitive claim. Thus, even if the indictment was subject to a special demurrer, [Metts] failed to demonstrate a reasonable likelihood that, but for defense counsel's failure to demur to the indictment, the outcome of the trial would have differed.

(Footnote omitted.) *Robbins v. State*, 290 Ga. App. 323, 329 (4) (a) (659 SE2d 628) (2008). Metts thus cannot succeed on the prejudice prong of his ineffective assistance claim.

(b) The police investigator testified that after he arrived at the hospital where the victim had been taken by her mother, the mother stated to him that the victim had told her several times that Metts had forced her to perform oral sex on him. Metts argues that his defense counsel was ineffective in failing to object on hearsay and double hearsay grounds to the investigator's testimony concerning what the mother had told him that the victim had told her. We are unpersuaded.

While the investigator's testimony was double hearsay, each layer of hearsay was admissible under the applicable rules of evidence. First, the underlying out-of-court statement of the victim to her mother concerning what Metts had done to her was admissible under the Child Hearsay Statute, OCGA § 24-3-16. See *Lopez v. State*, 291 Ga. App. 210, 212 (1) (661 SE2d 618) (2008); *Manders v. State*, 281 Ga. App. 786, 788 (1) (637 SE2d 460) (2006). Second, the mother's out-of-court statement to the investigator was itself admissible as a prior inconsistent statement of the mother, since the mother testified that the victim only told her once that Metts was forcing her to perform oral sex on him. See *Jackson v. State*, 258 Ga. 810, 811 (3) (375 SE2d 454) (1989); *Jackson v. State*, 292 Ga. App. 312, 314 (1), n. 5 (665 SE2d 20) (2008). Any objection to the investigator's testimony would have been without merit, and so Metts cannot establish the deficiency prong of his ineffective assistance claim. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citations and punctuation omitted).

Additionally, even if defense counsel was deficient in failing to object to the investigator's testimony, Metts cannot establish that he

340

was prejudiced as a result. The victim herself testified that she told her mother several times that Metts had forced her to perform oral sex on him. Thus, the police investigator's testimony was cumulative of other legally admissible testimony from the victim which established that the mother had been informed on several occasions of the forced sodomy.[8] See *Kirkland v. State*, 292 Ga. App. 73, 76 (3) (b) (663 SE2d 408) (2008) (no ineffective assistance of counsel where erroneous admission of hearsay is cumulative of "legally admissible evidence of the same fact [properly] introduced"). Moreover, the victim's testimony that Metts had forced her to perform oral sex on him was corroborated by the eyewitness testimony of two of her siblings. Under these circumstances, Metts has failed to demonstrate that "there is a reasonable probability that the outcome of the [trial] would have been different, but for counsel's [alleged] deficiency." *Jones*, 289 Ga. App. at 222 (2).

(c) According to Metts, his defense counsel was ineffective in failing to request that the jury be charged on the misdemeanor offense of furnishing or disseminating harmful material to a minor, OCGA § 16-12-103 (a) (1), which he contends was a lesser included offense of the child molestation count. We disagree because the trial court would not have been required to give such a charge, even if furnishing or disseminating harmful material to a minor was a lesser included offense, and even if defense counsel had requested a charge on it.

"The failure to give a requested charge on a lesser included offense when the evidence warrants it is error." (Citation omitted.) *Damare v. State*, 257 Ga. App. 508, 512 (2) (571 SE2d 507) (2002). But "[w]here, as here, the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." (Citations and punctuation omitted.) *Jackson v. State*, 213 Ga. App. 170, 171-172 (2) (b) (444 SE2d 126) (1994). Through the testimony of the victim and the police investigator, the state presented evidence of the completed offense of child molestation based on Metts causing the victim to view pornographic video images with the intent to arouse and satisfy his sexual desires. In contrast, Metts took the stand and denied ever showing pornographic video images to the victim. "Contrary to [Metts's] argument, the evidence showed the commission of the completed offense[ ] as charged or the commission of no offense," and so the trial court would not have

---

[8] "[W]here a witness testifies as to what he or she told another person, it is not hearsay." (Citation and punctuation omitted.) *Smashum v. State*, 293 Ga. App. 41, 42 (1) (666 SE2d 549) (2008).

erred by declining to charge the jury on the alleged lesser offense. *Huckeba v. State*, 217 Ga. App. 472, 475-476 (3) (458 SE2d 131) (1995). See also *Tyler v. State*, 279 Ga. App. 809, 811-812 (2) (632 SE2d 716) (2006), overruled in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007); *Close v. State*, 195 Ga. App. 652, 655 (4) (394 SE2d 563) (1990). Therefore, Metts cannot satisfy the deficiency prong of his ineffective assistance claim, since any request to charge on furnishing or disseminating harmful material to a minor would have been without merit. See *Shafer v. State*, 285 Ga. App. 748, 751 (3) (647 SE2d 274) (2007) (noting that "trial counsel [is] not deficient for failing to pursue meritless motions") (citation omitted).

(d) We have reviewed Metts's remaining ineffective assistance claims, which are predicated on the same claims of error discussed in prior divisions of this opinion, and find them to be without merit.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED APRIL 6, 2009.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, David Getachew-Smith, Assistant District Attorney*, for appellee.